1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY HERNANDEZ, | Case No.  1:14-cv-01270-AWI-BAM-PC |
| Plaintiff, | ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF |
| v. | |
| C. GIPSON, et al., | |
| Defendants. | THIRTY-DAY DEADLINE |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(1)(B) and Local Rule 302. Currently before the Court is Plaintiff's August 13, 2104, complaint.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail to state a claim on which relief may be granted," or that "seek monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

1

1   1915(e)(2)(B).

2       A complaint must contain "a short and plain statement of the claim showing that the

3   pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).   Detailed factual allegations are not

4   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5   conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell

6   Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Moreover, Plaintiff must demonstrate

7   that each defendant personally participated in the deprivation of Plaintiff's rights.   Jones v.

8   Williams, 297 F.3d 930, 934 (9th Cir.2002).

9       Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

10  liberally construed and to have any doubt resolved in their favor.   Wilhelm v. Rotman, 680 F.3d

11  1113, 1121 (9th Cir. 2012)(citations omitted).   To survive screening, Plaintiff's claims must be

12  facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer

13  that each named defendant is liable for the misconduct alleged.   Iqbal, 556 U.S. at 678-79; Moss

14  v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).   The "sheer possibility that a defendant

15  has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's

16  liability" falls short of satisfying the plausibility standard.   Iqbal, 556 U.S. at 678; Moss, 572

17  F.3d at 969.

18                                          **II.**

19                            **COMPLAINT ALLEGATIONS**

20      Plaintiff, an inmate in the custody of the California Department of Corrections and

21  Rehabilitation (CDCR) at the R. J. Donovan Correctional Facility in San Diego, brings this civil

22  rights action against defendant correctional officials employed by the CDCR at Corcoran State

23  Prison for failure to protect Plaintiff and failure to address Plaintiff's serious medical needs, in

24  violation of the Eighth Amendment.   Plaintiff names the following individual defendants:

25  Warden C. Gipson; Lieutenant A. De Los Santos; Sergeant D. Berna; Correctional Officer (C/O)

26  Adomi; Dr. W. Ulit, M.D.

27      Plaintiff's claims stem from injuries suffered in a physical altercation with two gang

28  members associated with prison gang STG11 who were housed on the 3B facility at Corcoran

1   and were "openly being investigated for gang and drug use." (Compl. 4:5.)  Plaintiff alleges that

2   the altercation occurred on March 27, 2013.  As a result, inmate Lopez, an associate of STG11

3   was removed from the 3B facility "after his self-proclaimed safety concerns and providing

4   information to facility staff on March 29, 2013." (Id. 4:11.)

5         Plaintiff alleges that he was returned to his housing unit without being adequately treated

6   for his injuries.  Plaintiff alleges that he suffered from severe concussions due to blunt force

7   trauma and lacerations to his skull.  Plaintiff alleges that he received treatment for his lacerations

8   (sutures) but did not receive treatment for his concussion.   On the same date, a "clinic officer"

9   saw Plaintiff in the medication line, and noted his severe head trauma and bruised left eye.

10  Plaintiff was immediately transported to San Joaquin Community Hospital.  Plaintiff underwent

11  a CAT scan, revealing multiple skull fractures due to blunt force trauma.  The doctor advised

12  Plaintiff that he should allow the fractures to heal without surgical intervention.  The next course

13  of treatment, if that failed, would be to insert titanium plating to stabilize the fractures.  Upon his

14  return to Corcoran, Plaintiff was sent back to the 3B facility.

15        On March 31, 2013, Plaintiff filed a health care request, seeking immediate surgery.

16  Plaintiff alleges that he could no longer "function responsively," or protect himself and his

17  personal property. (Id. 5:4.)   Plaintiff alleges that "it was at this time that staff were well aware

18  that there was an enemy situation within the facility and the Plaintiff was in no condition to

19  defend himself." (Id. 5:7.)   Plaintiff requested to be placed in Administrative Segregation

20  (AdSeg).  Plaintiff made his request to facility staff – Defendants De Los Santos and Berna.

21        On April 1, 2013, transportation officers arrived to take Plaintiff to a medical

22  appointment in Bakersfield.  Plaintiff alleges that Defendant Institutional Security Unit (ISU)

23  Officer Adomi spoke to the transportation officers.  The officers advised Adomi that Plaintiff

24  was requesting to be removed from 3B facility due to his injuries and that he could no longer

25  defend himself.  Adomi had Plaintiff placed in Receiving and Release, and met with Plaintiff.

26  Plaintiff told Adomi that he could no longer protect himself or his property.  Plaintiff specifically

27  advised Adomi that De Los Santos and Berna were aware that Plaintiff sought removal from the

28  3B facility due to medical and enemy concerns.

1    Plaintiff alleges that Defendant Adomi left Plaintiff in Receiving and Release, while he
2  and other officers began a systematic search of the part of 3B facility where Plaintiff was housed.
3  Plaintiff alleges that this caused Plaintiff to gain more enemies.  Plaintiff alleges that De Los
4  Santos, Berna and Adomi knew that such conduct would be blamed on Plaintiff and place him in
5  further danger.  Plaintiff was then returned to his housing unit which caused Plaintiff to "acquire
6  new enemies."  (Id. 6:17.)  Plaintiff alleges a Departmental Review Board hearing resulted in a
7  confirmation that "this action at 3B facility Corcoran State Prison caused enemy conflicts to
8  which there is no available facility to house the Plaintiff."  (Id. 6:21.)

9    On April 2, 2013, Plaintiff was transported to an eye clinic in Bakersfield.  Plaintiff
10  alleges that after arriving at the clinic, he was placed in a medical chair.  Plaintiff alleges that
11  because Corcoran officials refused to remove him from his housing unit, Plaintiff attempted to
12  commit suicide by wrapping a "machine cord" around his neck.  The transportation officers
13  removed the cord from Plaintiff's neck.

14    Upon his return to Corcoran, Plaintiff was placed on suicide watch at the Acute Care
15  Hospital (ACH), where Plaintiff was seen by Dr. Wang and Dr. Roy, as well as Counselor
16  Pasions.  Counselor Pasions advised Defendants De Los Santos and Berna that Plaintiff was
17  again requesting Placement in AdSeg.  Defendants De Los Santos and Berna refused to house
18  Plaintiff in AdSeg, and advised Dr. Wang and Dr. Roy that Plaintiff would be returned to his
19  assigned housing in the 3B facility.

20    Plaintiff alleges that Dr. Wang, Dr. Roy and Counselor Pasions diagnosed Plaintiff with
21  post-traumatic stress disorder (PTSD), based upon the attack upon Plaintiff.  Plaintiff was
22  advised by these individuals that because his request to be placed in AdSeg was denied, he
23  would be kept at the ACH until he was stable enough to return to his housing unit.  Plaintiff
24  remained in unstable condition for 30 days.  At the time, Dr. Wang and Dr. Roy "initiated
25  Ad.Seg. EOP placement due to PTSD and enemy concerns, as 3B facility staff no longer had
26  custody of the Plaintiff."  (Id. 8:16.)

27

28

# III.

# DISCUSSION

## A.      Failure to Protect

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  A prisoner seeking relief for an Eighth Amendment violation must show that the official acted with deliberate indifference toe threat of serious harm or injury to an inmate. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).  "Deliberate indifference" has both subjective and objective components.  A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . must also draw the inference."  Farmer, 511 U.S. at 837.  Liability may follow only of a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at 837.

Here, Plaintiff fails to allege facts from which an inference could be drawn that any of the named defendants knew of a specific harm to Plaintiff and disregarded that harm.  Plaintiff concludes that defendants are liable because Plaintiff he was attacked by inmates affiliated with a prison gang.  Plaintiff does not, however, indicate what, if any, specific information Defendants were aware of that indicated that the inmates who attacked Plaintiff were a particular threat to Plaintiff.  Plaintiff specifically alleges that the inmates "selected Plaintiff at random to assault an inmate for there [sic] purpose to evade drug debts and be removed from the facility, they did not know the Plaintiff."  (Id. 4:8.)  To hold any individual Defendant liable for a failure to protect Plaintiff, Plaintiff must allege some facts indicating that each of the individual Defendants was aware of a specific harm to Plaintiff, and disregarded that harm.  The Ninth Circuit has held that even inmates of opposite gangs placed in a cell with each other, with nothing more, fails to satisfy the Eighth Amendment's standard that prison officials must be aware of a specific risk to an inmate.  Labatad v. Corrections Corp. of America, 714 F.3d 1155 (9th Cir. 2013).  The facts alleged in that case suggest that although the Plaintiff did fear for his safety, there was no

1   specific information that the defendants knew of from which they could draw an inference that

2   the plaintiff was exposed to a specific threat.   Here, Plaintiff has not alleged any facts indicating

3   that the inmates who attacked Plaintiff were documented enemies of his, or that there was some

4   particular information that Defendants knew of and disregarded.   Plaintiff therefore fails to state

5   a claim for relief for failure to protect in violation of the Eight Amendment.

6          **B.     Defendant Adomi**

7          The only conduct charged to Defendant C/O Adomi is that when he was told by Plaintiff

8   that his request to be moved to AdSeg was denied, Adomi instigated a search of Plaintiff's

9   housing unit area.   Plaintiff alleges that Adomi knew that Plaintiff would be blamed for the

10  search, and therefore acquire new enemies.   The Court finds these allegations to be vague.   As

11  noted above, in order to meet the Eighth Amendment standard, Plaintiff must allege facts

12  indicating that Defendant Adonis knew of a specific harm to Plaintiff and failed to protect him

13  from it.   Plaintiff's allegations indicate that the offending inmates were removed from the

14  housing unit.   There are no facts alleged to support Plaintiff's conclusory allegation that a cell

15  search of a particular area would put Adonis on notice that Plaintiff was subjected to a specific

16  risk of harm.   Plaintiff's generalized and conclusory allegation that he would acquire new

17  enemies are insufficient to put C/O Adomi on notice of a specific harm to Plaintiff.   Plaintiff

18  therefore fails to state a claim for relief against Defendant Adomi.

19         **C.     Medical Care**

20         A prisoner's claim of inadequate medical care does not constitute cruel and unusual

21  punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of

22  "deliberate indifference to serious medical needs."   Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

23  2006)(quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).   The two part test for deliberate

24  indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

25  to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

26  wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately

27  indifferent."   Jett, 439 F.3d at 1096.   A defendant does not act in a deliberately indifferent

28  manner unless the defendant "knows of and disregards an excessive risk to inmate health or

6

1  safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a high legal

2  standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v.

3  Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or

4  failure to respond to a prisoner's pain or possible medical need" and the indifference caused

5  harm.  Jett, 439 F.3d at 1096.

6        In applying this standard, the Ninth Circuit has held that before it can be said that a

7  prisoner's civil rights have been abridged, "the indifference to his medical needs must be

8  substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

9  cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980)(citing

10  Estelle, 429 U.S. at 105-106).  "[A] complaint that a physician has been negligent in diagnosing

11  or treating a medical condition does not state a valid claim of medical mistreatment under the

12  Eighth Amendment.  Medical malpractice does not become a constitutional violation merely

13  because the victim is a prisoner."  Estelle, 429 U.S. at 106; see also Anderson v. County of Kern,

14  45 F.3d 1310, 1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate

15  indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

16  1990).  Additionally, a prisoner's mere disagreement with diagnosis or treatment does not

17  support a claim of deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

18        Here, Plaintiff has alleged facts indicating that he suffered from an objectively serious

19  medical condition – a fractured skull and lacerations.  Plaintiff has alleged facts, liberally

20  construed, that his initial treatment was only for the lacerations.  Plaintiff does not, however,

21  allege any specific conduct as to Defendant Dr. Ulit, nor does Plaintiff identify allege any facts

22  indicating that any medical official knew of and disregarded a serious medical condition of

23  Plaintiff's.  The statute under which this action proceeds provides for liability for state actors

24  that cause "the deprivation of any rights, privileges, or immunities secured by the Constitution."

25  42 U.S.C.§ 1983.  The statute plainly requires that there be an actual connection or link between

26  the actions of the defendants, and the deprivation alleged to have been suffered by the plaintiff.

27  See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

28  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

7

1  constitutional right, within the meaning of section 1983, if he does an affirmative act,

2  participates in another's affirmative acts, or omits to perform an act which he is legally required

3  to do that causes the deprivation of which complaint is made."  <u>Johnson v. Duffy</u>, 588 F.2d 740,

4  743 (9th Cir. 1978).

5       In order to hold an individual defendant liable, Plaintiff must name the individual

6  defendant, describe where that defendant is employed and in what capacity, and explain how that

7  defendant acted under color of state law.  Plaintiff should state clearly, in his or her own words,

8  what happened.  Plaintiff must describe what each defendant, *by name*, did to violate the

9  particular right described by Plaintiff.  Plaintiff has not done so here.  Plaintiff's claim of

10 deliberate indifference to serious medical needs should therefore be dismissed.

11      **D.      Supervisory Liability**

12      Plaintiff names as a Defendant Warden Gipson.  Government officials may not be held

13 liable for the actions of their subordinates under a theory of respondeat superior.  <u>Ashcroft v.</u>

14 <u>Iqbal</u>, 556 U.S. 662, 673 (2009).  Since a government official cannot be held liable under a

15 theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has

16 violated the Constitution through his own individual actions.  <u>Id</u>. at 673.  In other words, to state

17 claim for relief under section 1983, Plaintiff must link Warden Gipson with some affirmative act

18 or omission that demonstrates a violation of Plaintiff's federal rights.   Plaintiff has failed to do

19 so.  Warden Gipson should therefore be dismissed.

20      **E.      Unrelated Claims**

21      Plaintiff may not assert a failure to protect claim, while simultaneously asserting a

22 deliberate indifference claim related to medical treatment. The denial of Plaintiff's request to be

23 removed from 3B facility and the treatment Plaintiff received are unrelated claims.  Plaintiff may

24 not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a),

25 20(a)(2).  As an initial matter, Plaintiff may bring a claim against multiple defendants so long as

26 (1) the claim arises out of the same transaction or occurrence, or series of transactions and

27 occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2*);*

28 <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1351 (9th Cir. 1997); <u>Desert Empire Bank v. Insurance Co.</u>

of North America, 623 F.3d 1371, 1375 (9th Cir. 1980).  Thus, multiple claims against a single party are permissible, but Claim A against Defendant 1 should not be joined with unrelated claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass (a multiple claim, multiple defendant) suit produces, but also to ensure that prisoners pay the required filing fees.  The Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without the prepayment of the required fees.  28 U.S.C § 1915(g).  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff will be given an opportunity to file a first amended complaint under this case number, wherein he is directed to plead only related claims.  All unrelated claims should be brought in separate suits.

## IV.

## CONCLUSION AND ORDER

For the reasons stated, Plaintiff's complaint violates Federal Rule of Civil Procedure 18 and fails to state a claim upon which relief may be granted.  Plaintiff is granted leave to file an amended complaint within thirty (30) days.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)(no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. 662, 678.  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ."  Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in and of itself without reference to the prior or superseded pleading,"

Local Rule 220.  "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."   <u>King</u>, 814 F.2d at 567 (citing to <u>London v. Coopers Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); <u>accord</u> <u>Forsyth</u>, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.   The Clerk's Office shall send to Plaintiff a civil rights complaint form;

2.   Plaintiff's complaint, filed August 13, 2014, is dismissed for failure to state a claim;

3.   Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint or a notice of voluntary dismissal; and

4.   If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend that this action be dismissed, with prejudice, for failure to state a claim and to obey a court order.

IT IS SO ORDERED.

Dated:   **February 3, 2016**                    /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE

10